IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LINDA JONES                          :

                                     :

    v.                               :    Civil Action No. DKC 06-2892

                                     :

CALVERT GROUP, LTD.                  :

**MEMORANDUM OPINION**

Presently pending and ready for review in this employment discrimination case is the motion of Defendant Calvert Group, Ltd.'s motion for summary judgment. (ECF No. 42). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the following reasons, the motion for summary judgment will be granted.

**I.    Background**

**A.    Factual Background**

The facts viewed in the light most favorable to the Plaintiff, the non-moving party, are as follows. Plaintiff Linda Jones is a 56 year old African American resident of Maryland and a former employee of Defendant Calvert Group, Ltd. ("Calvert").[1] Calvert is an investment management company that serves institutional investors, workplace retirement plans,

_____

[1] Plaintiff was fifty-six years old when the amended complaint was filed on June 11, 2009. (ECF No. 29 ¶ 7).

financial intermediaries, and their clients. (ECF No. 42-1, at 2). Plaintiff was hired by Calvert in 1989 as a computer operator. In that position, her job duties included monitoring computer systems, printing reports, and performing system backups. (*Id.* at 3)(citing Jones Dep. I, ECF No. 41-4, at 60). In July 1995 Plaintiff was transferred to the position of Help Desk Operator/Analyst. (*Id.*)(citing Jones Dep. I, ECF No. 42-4, at 63). Her title later changed to Technical Support Analyst. (*Id.*)(citing Jones Dep. I, ECF No. 42-4, at 68). As a Technical Support Analyst, Plaintiff was responsible for responding to client inquiries for information and training, computer system access, system commands, equipment problems, software questions, and any software or hardware requests. (*Id.* at 4)(citing Rutkowski Decl., ECF No. 42-13). Plaintiff's supervisor from April 1996 until her termination in October 2006 was Roseanne Rutkowsi. Overall Plaintiff performed her duties in this position competently, although there were occasional complaints about her work and in her annual reviews she was advised to improve her written work and continue to attend training seminars and classes. (*Id.* at 4)(citing Rutkowski Decl., ECF No. 42-13 ¶ 4).

In September 2002, Plaintiff applied for the position of Programmer Analyst at Calvert. All the applicants for the

position were required to take a standardized aptitude test.
The individual selected for the position, a white male under the
age of 40, scored 80 out of 100 on the test while Plaintiff
scored only 30. (*Id.* at 5)(citing Nienaber Decl., ECF No. 42-32
¶ 3). Plaintiff maintains that the test was a general aptitude
test that did not measure the specialized skills needed for the
position, (ECF No. 43, at 8-9), but she never produced any
evidence to support this assertion.

In early 2003, Plaintiff requested a promotion to the
position of "Senior Technical Support Analyst." Ms. Rutkowski
discussed this request with Mr. Nienaber, the Senior Vice
President for Information Technology, and Dennis Truskey, the
Vice President of Human Resources. (ECF No. 42-1, at 4) They
were not initially supportive of the promotion, but Ms.
Rutkowski convinced them that with guidance and training
Plaintiff could fulfill the job requirements. Plaintiff was
then promoted with a salary increase. (*Id.* at 5-6)(citing
Nienaber Decl., ECF No. 42-32 ¶ 5, 17 and Rutkowski Decl.
ECF No. 42-13 ¶ 7-8). As a Senior Technical Support Analyst,
Plaintiff maintained many of the same duties and
responsibilities from her old position but was also expected to
demonstrate a higher degree of technical skill and knowledge and
to take more responsibility for the management of projects,

including the supervision and direction of junior staff. (*Compare* ECF No. 42-14, Calvert Group Job Description, Technical Support Analyst *with* ECF No. 42-17, Calvert Group Job Description, Senior Technical Support Analyst). Plaintiff did not consider the changes in her job duties to be significant and has stated that she considers the two positions to be "basically the same." (ECF No. 43, at 7)(citing Jones Dep. I, ECF No. 42-4 at 85.)

In May 2003, Plaintiff filed a charge of discrimination with the Maryland Commission on Human Relations ("MCHR") wherein she alleged that she had been denied the Programmer Analyst position because of her race, sex, and age. (ECF No. 42-1, at 7)(citing Jones Dep. I, ECF No. 42-4, at 152). Shortly after the charge was filed Plaintiff reached a settlement with Calvert. (*Id.*)(citing Jones Dep. I, ECF No. 42-4, at 165; Settlement Agreement, ECF No. 42-8). Per its terms, Plaintiff withdrew her charge and in exchange received a salary raise and an agreement from Calvert to work with Plaintiff to develop her knowledge, skills, and experience. (*Id.*)(citing Settlement Agreement, ECF No. 42-8).

After her promotion, Ms. Rutkowski continued to receive complaints about Plaintiff's performance. For example, Veryl Jessen, an IT manager for one of Calvert's main clients,

reported Plaintiff's misuse of "PCHelps" a technical support service intended for direct use by clients or employees to solve problems with basic programs like Microsoft Word and Internet Explorer, but which Plaintiff used to assist her in solving clients' problems that she should have been able to solve on her own. (*Id.* at 8)(citing Rutkowski Decl., ECF No. 42-13 ¶ 10 and ECF No. 42-19). Mr. Jessen also reported that Plaintiff had failed to install properly a working printer component and returned it to the manufacturer instead of seeking guidance from others, thereby incurring unnecessary costs and delay in obtaining a new printer. (*Id.* at 9)(citing Rutkowski Decl., ECF No. 42-13 ¶ 11 and ECF No. 42-20).

In addition, Plaintiff's annual reviews chronicled problems with her work performance. In her March 2004 review, for work the previous year, although Plaintiff was given an overall rating of competent, the need for improvement in several areas was highlighted. Ms. Rutkowski met with Plaintiff to discuss her review and possible avenues for improvement. Specifically Plaintiff was instructed to improve her written and verbal communication with supervisors and the associates she was supporting, to take more ownership over completion of tasks, and to update or write procedures for the projects she was responsible for. (*Id.* at 9-10).

Plaintiff's supervisors continued to receive complaints regarding her performance and in her June 2005 review, for work done in 2004 and the first half of 2005, she was given an overall assessment of "Needs Improvement". (*Id.* at 12). Among the identified problem areas were her email communications with supervisors and within her group, her demeanor, her written work, her customer relationships, and her ability to take on additional projects with little supervision or guidance. (2005 Performance Review, ECF No. 42-23). Ms. Rutkowski met with Plaintiff to discuss the review and to provide targeted suggestions for improvement. Ms. Rutkowski was unaware of Plaintiff's 2003 EEOC filing at this time and has indicated that the purpose of the review was to alert Plaintiff to her supervisor's concerns with her performance. (ECF No. 42-1 at 13; ECF No. 42-13).

Following the review Plaintiff's performance did not improve and her supervisors continued to receive complaints. To discuss Plaintiff's continued performance issues, Ms. Rutkowski held a ninety minute meeting with Plaintiff and Kathy Torrence, the new Vice President for Human Resources at Calvert, on October 18, 2005. (*Id.* at 14)(citing Rutkowski Decl., ECF No. 42-13, ¶¶ 7-28; Jones Dep. I, ECF No. 42-4, at 183). Yet another meating was held in January 2006 to discuss three

specific examples of Plaintiff's poor customer feedback. (*Id.* at 15)(citing Rutkowski Decl., ECF No. 42-13 ¶ 30). Shortly after this meeting, Ms. Rutkowski received an email from Mr. Nienaber discussing Plaintiff's failure to replace properly a backup tape and her refusal to discuss the problem with Mr. Nienaber. (Rutkowski Decl., ECF No. 42-13 ¶ 31)(citing ECF No. 42-26).

At this point Plaintiff had held the position of Senior Technical Support Analyst for three years but had still failed to satisfy her supervisors that she was capable of completing her work assignments to the desired level. Accordingly, Ms. Rutkowski worked with the Human Resources Department to design a formal improvement plan. (*Id.* at 16). The purpose of the plan was to give Plaintiff specific guidance on the precise nature of her performance problems, identify steps she must take to correct it, establish a timeframe for improvement, and to communicate consequences for failure to do so. (*Id.*). In March 2006 Ms. Rutkowski met with Plaintiff to go over her "Written Improvement Plan". The Plan identified three core areas for Plaintiff to improve upon, technical skills, communication skills, and the ability to resolve conflict and problems, and specified that Plaintiff should meet with her supervisors to discuss her progress on a biweekly basis. (*Id.;* ECF No. 42-27).

Plaintiff failed to improve in the specified areas over the course of the next few months and as a result was presented with a Final Written Warning on July 21, 2006. This warning laid out five specific tasks with specific deadlines and indicated that unless there was concrete and sustained improvement in her performance by September 1, 2006, her employment would be terminated. (*Id.* at 19; Rutkowski Decl., ECF No. 42-13 ¶ 43; ECF No. 42-30; Torrence Decl., ECF No. 42-36 ¶ 10). Shortly thereafter Plaintiff took an approved medical leave of absence and did not return to work until September 5, 2006. (*Id.*). Upon her return Plaintiff did not demonstrate the requisite level of improvement and on October 19, 2006 Mr. Nienaber terminated her employment for unsatisfactory performance. (*Id.* at 21)(citing Nienaber Decl., ECF No. 42-32 ¶¶ 14-15; Rutkowski Decl., ECF No. 42-13 ¶ 49; Torrence Decl., ECF No. 42-36 ¶ 12). Following her termination, Plaintiff's job duties initially were spread amongst others in her group. Then on May 14, 2007, Calvert hired Pam Hunter, a 44 year old African American woman, to replace Plaintiff. (Rutkowski Decl., ECF No. 42-13 ¶ 50).

**B.  Procedural Background**

Plaintiff filed a charge of discrimination with the EEOC and the MCHR in July 2005 asserting that her performance was subject to undue scrutiny by management and that she received a

negative performance review in 2005 as retaliation for having filed a charge with the MCHR in May 2003. (Jones Dep. I, ECF No. 42-4, at 153-56; ECF No. 42-19). On April 10, 2006, the MCHR issued a written finding that it had "no probable cause to believe that the Complainant has been discriminated against in retaliation for filing a complaint. . ." (ECF No. 42-20).

On August 8, 2006 the EEOC issued Plaintiff a right to sue letter, and Plaintiff filed her original complaint in this court on November 3, 2006 alleging that Defendant had discriminated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, and in violation of the Age Discrimination in Employment Act ("ADEA"), and alleging that Defendant had breached the settlement agreement pertaining to her 2003 EEOC charge. (ECF No. 6). Defendant filed a motion to dismiss that was granted as to all counts on June 18, 2007. (ECF Nos. 12 and 13). Plaintiff appealed and the Court of Appeals for the Fourth Circuit reversed the dismissal of the Title VII retaliation claim and remanded the dismissals of the Title VII and ADEA discrimination claims for dismissals for lack of subject matter jurisdiction because Plaintiff had failed to exhaust her administrative remedies. (ECF No. 16); *Jones v. Calvert Group*, Ltd., 551 F.3d 297 (4th Cir. 2009).

While the appeal was pending before the Fourth Circuit, Plaintiff filed a new charge of discrimination with the EEOC alleging that she was terminated by Calvert because of her race, sex, and age, and in retaliation for engaging in protected activities under Title VII. (ECF No. 42-11). Plaintiff received a right to sue letter for these claims and filed an amended complaint on June 11, 2009, in the district court. (ECF No. 29). The amended complaint includes five counts. In count one, Plaintiff alleges that she "was terminated in retaliation for engaging in protected activity under Title VII, specifically filing a complaint of discrimination on July 11, 2005, for participating in the administrative case directly and through her counsel, through the spring and summer of 2006, and for receiving the right to sue letter on or about August 8, 2006. (*Id.* at ¶ 18). In count two, Plaintiff alleges that she was terminated in violation of the ADEA. In counts three and four, Plaintiff alleges that she was terminated because of her race and sex in violation of Title VII. Finally in count five, Plaintiff alleges breach of the settlement agreement because defendant "fail[ed] to identify areas in which plaintiff's performance could and would have benefitted from training or other assistance and fail[ed] to offer and provide training and/or assistance, as it was obligated to do under the

contract." (*Id*. at ¶ 30). Plaintiff further alleged that with such training her performance would have exceeded expectations and she would have been promoted rather than terminated. (*Id*. at ¶ 31).

The parties engaged in discovery and on March 1, 2010, Defendant filed a motion for summary judgment. (ECF No. 42)

## II. Analysis

### A. Standard of Review

Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to

the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 377 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp*., 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted).

## B. Discrimination Claims

Defendant argues that summary judgment on Plaintiff's age, race, and sex discrimination claims is appropriate because Plaintiff has failed to establish a *prima facie* case of

discrimination and Plaintiff has no evidence that Defendant's articulated reasons for terminating Plaintiff are illegitimate or pretextual. Plaintiff disagrees with both characterizations of the evidence and argues that there is a genuine issue of material fact for these claims.

There are two methods for proving intentional discrimination in employment: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three step, burden shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), and more recently affirmed in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). Although *McDonnell Douglas* dealt only with Title VII claims, the framework is also applied to age discrimination claims arising under the ADEA. *See Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004)(*en banc*), *cert. dismissed*, 543 U.S. 1132 (2005). Plaintiff has produced no direct or indirect evidence of intentional discrimination. Therefore, she must proceed under the *McDonnell Douglas* burden shifting framework. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Under the *McDonnell Douglas* framework, the plaintiff first must establish a *prima facie* case of discrimination. *See*

*McDonnell Douglas Corp.*, 411 U.S. at 802. Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Reeves*, 530 U.S. at 142 (2000)(citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the defendant succeeds in doing so, the presumption of discrimination raised by the plaintiff's *prima facie* case is rebutted. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000)(citing *Burdine*, 450 U.S. at 255 n.10). Then, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Burdine*, 450 U.S. at 253. In the end, "the plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against him." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996)(citing *Burdine*, 450 U.S. at 253).

To demonstrate a *prima facie* case of race, sex, or age discrimination under the pretext framework in discharge cases, the plaintiff must show that: (1) she is a member of a protected class; (2) she was discharged; (3) she was performing her job satisfactorily and meeting the employer's legitimate

expectations; and (4) the discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310 (1996); *Mereish v Walker*, 359 F.3d 330, 332 (4th Cir. 2004); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989).[2]

The parties do not dispute items one and two. They agree that Plaintiff was a member of protected classes of race, gender, and age and that her discharge constitutes an adverse employment action. The disagreement is about whether Plaintiff was performing her job satisfactorily and whether the circumstances of her termination raise an inference of discrimination.

In assessing whether an employee was performing her duties to a satisfactory level "[i]t is the perception of the decision maker which is relevant." *Johnson v. Mechs. & Farmers Bank*, 309 Fed. Appx. 675, 683 (4th Cir. 2009)(quoting *Smith v. Flax*, 618

---

[2] To establish a *prima facie* case of wrongful termination under the ADEA a plaintiff must establish that: (1) she is a member of the protected class; (2) she was qualified for the job and met the employer's legitimate expectations; (3) she was discharged despite her qualifications and performance; and (4) following her discharge, she was replaced by a substantially younger individual with comparable qualifications. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996); *Causey v. Balog*, 162 F.3d 795, 802, n. 3 (4th Cir. 1998); *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir.), *cert. denied*, 549 U.S. 812 (2006).

F.2d 1062, 1067 (4th Cir. 2003). In order for a plaintiff to establish that she was meeting her employer's expectations she can provide evidence of one of the following: (1) employer concessions that the employee was performing satisfactorily at the time of discharge, (2) evidence that the employer had previously given the employee positive performance reviews or (3) qualified expert opinion testimony as to the employer's legitimate job performance expectations and an analysis and evaluation of plaintiff's performance in light of those expectations. *King v. Rumsfeld*, 328 F.3d 145, 149-150 (4th Cir.), *cert. denied*, 540 U.S. 1073 (2003). The employee's perception of her level of performance is irrelevant. *Johnson*, 309 F.3d at 683. Likewise, evidence that an employee's work was on par with that of her coworkers is insufficient to establish that the work met her employer's expectations. *King*, 328 F.3d at 150.

Plaintiff has produced no evidence to support her position that she was performing her job at a level that met or exceeded her employer's expectations. To the contrary, Defendant has presented a thorough chronicle of areas in which Plaintiff was underperforming and failed to improve. Plaintiff argues that Defendant has downplayed the positive feedback that she received and solicited negative feedback. (ECF No. 43, at 6). But even

accepting this as true, the fact that Plaintiff at one time performed her job well or that Defendant solicited commentary on her work does not refute the wealth of evidence presented by Defendant to demonstrate her under-performance. Likewise the fact that Plaintiff was meeting or exceeding expectations in 2002 and earlier years, (*see id.* at 7), prior to her promotion, has no bearing on whether she was adequately performing her job in 2006 when she was terminated.

In addition to failing to provide evidence of the third element of a *prima facie* case of discrimination, Plaintiff has produced no evidence to raise an inference that her termination was an example of unlawful discrimination. Plaintiff has identified no evidence from which one might infer that Calvert had discriminatory motives. Moreover the individual that Defendant hired to replace Plaintiff was a member of the same protected classes; Pam Hunter was an African-American female over the age of 40. Plaintiff suggests that Defendant specifically recruited Ms. Hunter in order to cover up its discriminatory firing. (*See* ECF No. 43, at 17). But the evidence shows instead that Ms. Rutkowski simply notified a colleague of Ms. Hunter at her former employer about the position, as she typically does for any job opening. (ECF No.43-3, at 37-38).

Even if Plaintiff had established a *prima facie* case of discrimination, Defendant would still be entitled to summary judgment because it has presented a legitimate, nondiscriminatory reason for Plaintiff's termination and Plaintiff has not refuted it. *See e.g., Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996)("[j]ob performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision.")(citing *Burdine*, 450 U.S. at 258-59; *Young v. Lehman*, 748 F.2d 194, 198 (4th Cir. 1984), *cert. denied*, 471 U.S. 1061 (1985)). Defendant maintains that Plaintiff was terminated because of her poor job performance and in particular her failure to meet the goals and deadlines set forth in her Final Warning letter. Plaintiff has not refuted this evidence in anyway and does not even argue that she was meeting her performance goals. Accordingly, summary judgment for Defendant on the discriminatory discharge claims will be granted.

### C. Retaliation Claim

In order to establish a *prima facie* case of retaliation a plaintiff must show: (1) that she engaged in a protected activity; (2) that the employer took an adverse employment action against her; and (3) that a causal connection existed between the activity and the adverse action. *Munday v. Waste*

*Mgmt. of N. Am. Inc.*, 126 F.3d 239, 242 (4th Cir. 1997), *cert. denied*, 522 U.S. 1116 (1998); *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 458 (4th Cir. 2002).

Defendant does not dispute that Plaintiff engaged in a protected activity when she filed her charge of discrimination with the EEOC, but argues that Plaintiff cannot establish a causal nexus between that protected activity and her termination. (ECF No. 42-1, at 31). Defendant argues that the lapse in time between the filing of EEOC Charges in 2003 and 2005 and her termination in late 2006 and the fact that Plaintiff's supervisor was not even aware of the EEOC charges in 2005 precludes any finding of a causal nexus. *Id.* Plaintiff argues in response that Defendant took a series of retaliatory actions that began after the filing of her initial EEOC charge in 2003 and culminated with her termination in 2006. (ECF No. 43, at 19). Plaintiff also argues that the filing of the EEOC charge is not the only relevant protected activity. She contends that maintaining an EEOC charge and receiving a right to sue letter also constitute protected activities and points out that she received her right to sue letter for her 2005 EEOC charge shortly before her termination in 2006. *Id.*

The analysis begins with identifying Plaintiff's protected activities and assessing their proximity to Plaintiff's

termination.  Protected activities include either opposing an act of discrimination or participating in an investigation of potential discrimination.  *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005), *cert. denied*, 547 U.S. 1041 (2006).  Activities that constitute participation are outlined in Title VII and include:  (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing.  *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)(citing 42 U.S.C.. § 2000e-3(a)).  Filing a charge of discrimination with the EEOC or MCHR is undoubtedly a protected activity, but courts have held that the mere receipt of a right to sue letter from the EEOC is not.  *See, e.g., Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)(noting with approval the appellate court's determination that the EEOC's issuance of a right-to-sue letter was a not a protected activity because the employee takes no part in it)(*per curiam*).  In addition while active participation in an EEOC investigation is protected, the mere passage of time between filing an EEOC charge and receipt of an EEOC determination is not.  *See, e.g., Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208-09 (10th Cir. 2009).  In this case the only protected activities are Plaintiff's filing of charges of discrimination with the EEOC and MCHR on May 1, 2003

and July 6, 2005. Although Plaintiff's charge was pending before the EEOC from June 5, 2005 until August 8, 2006, Plaintiff has not offered any evidence that she took affirmative acts to assist with the EEOC's investigation that might constitute protected acts during that period.

In order to establish a causal nexus, Plaintiff must demonstrate either close temporal proximity between the protected activity and her termination, *Breeden*, 532 U.S. at 273-74, or evidence of retaliatory animus in the intervening period. *Letteri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). If temporal proximity is the only evidence of causation the courts uniformly hold that the temporal proximity must be "very close." *Breeden*, 532 U.S. at 273 (citing cases). The passage of as little as three or four months of time has been found to preclude a finding of causation. *See e.g., Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992)(4-month period insufficient).

Plaintiff argues that longer gaps between the protected activity and adverse employment act have been allowed, but the cases she cites are readily distinguishable and do not support a finding of temporal proximity here. For example, Plaintiff references *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d

21

541, 550 (4th Cir. 2006), where the protected activity was taking medical leave under the Family Medical Leave Act ("FMLA"). The plaintiff in that case began taking medical leave in 2000 but was not fired until three and a half years later, and the Fourth Circuit ruled that a *prima facie* case of retaliation had been established. It is important to note, however, that the plaintiff in *Yashenko* had taken five periods of medical leave throughout the time period from 2000 until 2003, including one in 2003 that ended shortly before his termination. *Id.* at 545. This case does not support the proposition that a claim of retaliation can go forward where over three years passed between the protected activity and the adverse employment action. Similarly in *Jones v. Washington Metropolitan Area Transit Authority*, 946 F.Supp. 1011, 1022 (D.D.C. 1996), unique circumstances persuaded the court to uphold a jury finding of retaliation where three and a half years elapsed between the filing of an EEOC charge and the employee's termination. Namely the court decided that the jury could have considered the plaintiff's retention of new counsel, which occurred shortly before her termination, to be a protected activity because it signaled the plaintiff's commitment to move forward with the litigation. *Id.* No actions of that character occurred in this instance, indeed there is no evidence of any affirmative action

taken by Plaintiff to maintain or pursue her charge after it was filed in 2005. In this case the fifteen or thirty-eight months that passed from the time that Plaintiff's EEOC charges were filed until her termination in October 2006 is simply too long to find temporal proximity.

Plaintiff also seems to be arguing that Defendant exhibited retaliatory animus in the intervening period by engaging in a prolonged termination process. Plaintiff contends that Defendant began building a record of complaints and negative reviews in 2003 and downgraded her performance evaluations in 2004 and 2005 as part of a long-term plan to terminate her position. (ECF No. 43, at 19). Plaintiff's argument rests solely on speculation though, and she has not produced any evidence to even suggest, let alone prove, that her supervisors did not honestly believe that her performance was poor and that she was failing to improve to the degree necessary to meet their expectations.

In sum, Plaintiff has failed to produce evidence to maintain a *prima facie* case of retaliation. And even if she had, Defendant has offered a legitimate and non-discriminatory explanation for her termination that Plaintiff has failed to rebut. For all these reasons, summary judgment in favor of Defendant will be granted on the retaliation claim.

## D. Breach of Contract Claim

Defendant argues that the breach of contract claim was already dismissed by the court with prejudice and that ruling cannot be reconsidered now because it is the law of the case and subject to the mandate rule. (ECF No. 42-1, at 41-42). Defendant points out that in a prior opinion this court dismissed Plaintiff's breach of contract claim to the extent it related to Plaintiff's termination and declined to exercise supplemental jurisdiction over any other potentially viable breach of contract claims relating to the settlement agreement. (*Id.*)(citing ECF Nos. 12 and 13). Defendant further argues that because Plaintiff did not choose to appeal the dismissal of that claim it cannot now be reasserted. In addition, Defendant argues that if the court were to exercise jurisdiction over the claim Defendant is entitled to summary judgment. (*Id.* at 42-44).

Plaintiff counters that the breach of contract claim was dismissed initially without prejudice and the court later allowed its addition by amendment. (ECF No. 43, at 24). Plaintiff argues that the court's earlier opinion dismissing the claim noted that it could be refiled in state court because all the federal claims were being dismissed and was not a ruling on the merits subject to the mandate rule. Plaintiff also argues

that the undisputed facts show that Defendant breached the settlement agreement.

The court's prior ruling falls somewhere between the parties' positions. The prior opinion stated the following with respect to the breach of contract claim:

> The court has dismissed all claims over which it has federal question jurisdiction and, therefore, the breach of contract claim is only before this court pursuant to supplemental jurisdiction. The court will decline to exercise supplemental jurisdiction over any viable breach of contract claim. 28 U.S.C. § 1367(c)(3). Thus, out of an abundance of caution, the dismissal of count five will be specifically limited to the termination claim. If plaintiff wishes to pursue a breach of contract claim based on any other facts, she will be free to refile in state court.

(ECF No. 12, n. 11). The accompanying Order stated "Count five, for breach of contract due to her termination, BE, and the same hereby IS, DISMISSED for failure to state a claim. (ECF No. 13 ¶ 3). Contrary to Plaintiff's assertion then, the breach of contract claim due to Plaintiff's termination was dismissed with prejudice. The court's ruling on this specific claim was on the merits and is subject to the law of the case doctrine and mandate rule. But the court did not make any ruling on the merits with respect to any other breach of contract claims relating to the settlement agreement that Plaintiff might assert. It was those claims the court indicated Plaintiff was

welcome to file in state court. Due to the subsequent ruling from the Fourth Circuit and the reinstatement of Plaintiff's federal employment discrimination claims, it no longer makes sense to require Plaintiff to file any state law contract claims not adequately pled in the initial complaint in a separate state court proceeding, and they will be considered here.

Turning to the merits of the breach of contract claim, under Maryland law, to prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation. *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). In her amended complaint Plaintiff alleged that Defendant had breached the 2004 settlement agreement by "failing to identify areas in which plaintiff's performance could and would have benefitted from training or other assistance, and failing to offer and provide training and/or assistance." (ECF No. 29 ¶ 30). The harm that Plaintiff allegedly suffered as a result of this breach included "loss of position . . . loss of earnings, and loss of the training benefits to which she was entitled." (*Id.*). The court previously dismissed Plaintiff's breach of contract claim regarding termination, (ECF No. 12) and will not allow her to circumvent this ruling by claiming loss of her position and

earnings as a result of a different breach. Recovery for the loss of training benefits is not foreclosed by the earlier opinion, however, and Plaintiff may avoid summary judgment on this portion of the claim if there is a genuine dispute of material fact.

The terms of the 2004 settlement agreement provide that, in addition to an increase in Plaintiff's salary, Calvert's Human Resources "will work with representatives from the Information Technology department and Employee to develop and implement a career development plan intended to provide Employee with the knowledge, skills, and experience to better position her for potential future opportunities in Application Development." (ECF No. 43-2 ¶ 2). In its motion for summary judgment Defendant discusses at length the interactions between Plaintiff and her supervisors and members of the HR Department. The evidence shows that Plaintiff's supervisors met with her on a routine basis, highlighted areas for improvement, and suggested concrete steps that she could take to improve her skills. Plaintiff argues that if Defendant had performed its duties she would still be employed but has not identified any factual support for this claim nor has she identified either any specific training benefits that were lost or any way in which Defendant prohibited her from participating in training

programs.  To the contrary, Defendant has introduced evidence that Plaintiff was encouraged to take classes and seminars to improve her skills (Rutkowski Dep., ECF No. 42-5, at 192-94; Rutkowski Decl., ECF No. 42-13 ¶ 9) and Plaintiff admits this to be true.  (ECF No. 43, at 10).  The record establishes that while Plaintiff may be dissatisfied in the results of the training and assistance she received, Defendant performed in accordance with the settlement agreement.

The undisputed evidence does not support Plaintiff's breach of contract claim and summary judgment for Defendant on this count will be granted.

## III. Conclusion

For the foregoing reasons Defendant's motion for summary judgment will be granted.  A separate Order will follow.


                                        /s/
_____
                          DEBORAH K. CHASANOW
                          United States District Judge